ORIGINAL

FILED
FEB 26 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HUBBARD PROPERTIES, INC and JAMES L. HUBBARD | * | |
| PLAINTIFFS, | * | |
| VS. | * | Case No. 08-114 C |
| SECRETARY OF THE UNITED STATES DEPARTMENTOF HOUSING AND URBAN DEVELOPMENT | * | |
| DEFENDANT. | * | |

**PLAINTIFFS' VERIFIED COMPLAINT**

COME NOW Plaintiffs, Hubbard Properties, Inc. and James L. Hubbard, and file this Verified Complaint for damages.

**PARTIES AND JURISDICTION**

1. Plaintiff Hubbard Properties, Inc. is an Alabama corporation with its principal place of business in Jefferson County, Alabama.

2. Plaintiff James L. Hubbard is a resident of Shelby County, Alabama and is over the age of nineteen (19).

3. Defendant Secretary of United States Department of Housing and Urban Development ("HUD") is the properly named federal governmental agency.

4. This is an action to require The United States Department of Housing and Urban Development to perform its contractual obligations. Jurisdiction is vested with this Court pursuant to the Tucker Act, 28 U.S.C. § 1491, and the United States Court of Appeals for the Federal Circuit's decision in *Suburban Mortgage Associates, Inc. v. U.S. Dept. Of Housing and Urban Development*, 480 F.3d 1116, C.A. Fed (Dist. Col. 2007).

**FACTS**

5. On or about September 14, 2006, Defendant offered for sale at foreclosure the following described Property: Highland Village Apartments, 1024 Day Street Road, Montgomery, Alabama 36108, (hereinafter the "Property").

6. Defendant held a foreclosure sale auction at the Montgomery County Courthouse accepting oral bids beginning at 12:00 p.m. on September 14, 2006.

7. Plaintiffs submitted a bid for $1,300,000.00 and were named the high bidder on the Property. HUD then approved Hubbard as a "qualified" bidder, confirmed Hubbard as the high bidder, and identified Hubbard as the purchaser of the Property.

8. Defendant submitted an "Invitation to Bid" to Plaintiffs, which includes, among other attachments, the "Acknowledgment by Bidder." A copy of the executed Acknowledgment by Bidder is attached hereto as Exhibit "A."

9. As part of the sale requirement, Plaintiffs tendered a check in the amount of $200,000.00 to Defendant as earnest money on September 14, 2006. A copy of the cancelled check is attached as Exhibit "B." Pursuant to the Agreement, the $200,000.00 earnest money was to be applied to the purchase price of the Property and the balance of the purchase price would be paid by Plaintiffs at closing.

10. To date, HUD has failed to notify Plaintiffs of a closing date as promised and agreed.

11. Plaintiffs have been the high bidder on many HUD foreclosure sales prior to the one at issue. Prior to closing on the sale, HUD requires the high bidder to submit a "Previous Participation Certification" known as a Form 2530. The Form 2530 must be signed by the high

bidder and certifies that, among other things, the high bidder is not in default on any HUD properties at the time, has not been convicted of a felony, and is not a member of Congress. The Form 2530 also requires the high bidder to list his or her involvement and role in all previous HUD projects. Plaintiffs have submitted a number of Form 2530s to HUD in the past via facsimile.

12. According to the Invitation to Bid, within two days of the foreclosure sale date the high bidder must provide a Certification of Substantial Compliance to HUD certifying, among other things, that all projects owned by the high bidder that are located in the same jurisdiction as the Property at issue are in substantial compliance with applicable state and local housing statutes and regulations. On or about September 14, 2006 Plaintiffs submitted the Certification of Substantial Compliance form on the Property at issue via facsimile to HUD employee Jennifer Harry. A copy of said form is attached as Exhibit "C."

13. HUD recently implemented a new electronic system for filing documents and forms with HUD. The electronic system requires several steps before forms can be submitted.

14. For example, two days following the foreclosure sale date the Invitation to Bid requires the high bidder to certify that he has registered in the Active Partners Performance System ("APPS"), an electronic system accessed via HUD's web site. Although Plaintiffs had bought property from HUD in the past, Plaintiffs had not registered in the electronic system before the sale of the Property at issue. Plaintiffs did not have a lender ID which is required in order to complete the registration process.

15. On or about September 15, 2006, Plaintiffs called HUD's Birmingham office for help in registering electronically on the HUD web site. HUD instructed Plaintiffs to contact the

HUD officer in Atlanta overseeing the Highland Village Property sale. That same day, Plaintiffs' representatives contacted HUD's Atlanta officer who sent Plaintiffs a copy of the APPS "Quick Tips" instructions for registering with HUD electronically. A copy of the APPS "Quick Tips" is attached as Exhibit "D."

16. On Friday, September 15, 2006 Plaintiffs registered its organization in APPS on the HUD web site. In accordance with HUD's instructions Plaintiffs waited 24 hours before the next step in the APPS process – applying for a User ID.

17. At all times relevant hereto, Plaintiffs warned HUD that time was of the essence as the Property was susceptible to damage from vandals and a substantial decrease in value.

18. On or about Monday, September 18, 2006 Plaintiffs attempted to complete the remaining steps after waiting the required time. Plaintiffs were unable to complete the required steps as the system required a "lender ID," which HUD had not provided to Plaintiffs.

19. Plaintiffs contacted the HUD Atlanta office again but the HUD Atlanta office was unable to help. The HUD Atlanta office referred Plaintiffs to the HUD "multi-family help desk." Plaintiffs contacted the "multi-family help desk" on numerous occasions, but the "multi-family help desk" failed to respond to Plaintiffs' requests. The "multi-family help desk" does not allow callers to hold. It only allows callers to leave voice mails. Plaintiffs left multiple messages with the help desk to no avail.

20. Plaintiffs' employee who over saw the electronic registration process is highly proficient with computers and holds technical certifications from both Microsoft and Cisco, yet even he was unable to logon to the complicated HUD APPS system. Despite many requests for help, he was given absolutely no guidance from HUD.

21. Although Plaintiffs were ready, willing and able to perform and close on the Property, HUD prevented Plaintiffs from performing by failing to provide Plaintiff with the required "lender ID." Plaintiffs had already submitted the $200,000.00 earnest money to HUD. Plaintiffs were unable to perform the required steps because of HUD's inattention and negligence despite Plaintiffs' pleas for help. Defendant had already accepted Plaintiffs' $200,000.00 earnest money check for the sale of the Property. Plaintiffs acted in good faith.

22. The Property at issue was vacant at all times relevant hereto. As a result, Plaintiffs continuously explained to HUD throughout this process that time was of the essence as the Property was highly susceptible to deterioration and damage from vandals. In fact, the Property was damaged significantly as a direct result of HUD's inattention and negligence. The photographs attached hereto as Plaintiffs' Exhibit "E" (E1-E13), which are fair and accurate portrayals of the Property at issue, evidence the substantial deterioration and decrease in value of this Property. This damage occurred after Hubbard won the bid, but prior to a closing date, while Hubbard was attempting to get a password from HUD. HUD failed to provide the password or a closing date and instead allowed the Property to be completely destroyed by vandals.

23. The Agreement provides that in the event the Property suffers substantial damage prior to closing, as is clearly the case here, the Bidder can negotiate with HUD for a reduction in the sale price. If the parties are unable to agree on a new price, the Agreement allows Bidder to withdraw the bid and <u>requires HUD to return the earnest money</u>. See Exhibit "A," section 11.

24. Given the significant decrease in the Property's value due to the subsequent vandalism and HUD's continued refusal to help Plaintiffs with the registration process, HUD's

refusal to provide a closing date, and HUD's refusal to discuss an adjusted price for the Property due to the substantial damage, Plaintiffs ultimately were left with only one option. Plaintiffs requested return of the $200,000.00 earnest money.

25. Much to Plaintiffs' surprise, HUD flatly refused to return the funds, stating that Plaintiffs failed to comply with HUD's specific requirements during electronic registration. HUD failed to acknowledge that it in fact had not allowed Plaintiffs to comply with HUD guidelines despite Plaintiffs' repeated efforts to do so. HUD failed to act in good faith and is attempting to avoid its clear legal duty to return the funds. As a matter of equity, Plaintiffs are clearly entitled to the reimbursement or return of the $200,000.00 at issue.

26. As a direct and proximate cause of Defendant's conduct, Plaintiffs were caused to suffer and continue to suffer substantial financial losses, including attorneys' fees.

27. HUD continues to wrongfully and illegally refuse to return Plaintiffs' funds in bad faith despite numerous requests. HUD's position is baseless under the law and equity and cannot be explained.

28. Plaintiffs have made numerous demands for the return of the funds at issue.

29. Upon information and belief, Defendant HUD held an auction for sale of the Property on March 22, 2007 yet HUD continues to refuse to return the funds. Apparently, the Property was sold to a third party but HUD refuses to return the earnest money to Plaintiffs.

## COUNT I

## DECLARATORY RELIEF

30. Plaintiffs reallege and reaver each and every allegation of the Complaint as if set forth fully herein.

31. Plaintiffs allege that a justiciable controversy exists between the parties, which is in need of a just adjudication. Plaintiffs seek a declaration of the relative rights of the parties under the facts described herein. Plaintiffs allege that the title to the Property referenced herein is in question as a consequence of HUD's actions. Plaintiffs further allege that the Property at issue and the $200,000.00 earnest money at issue are the subject of bona fide disputes which are in need of determination.

WHEREFORE, the premises considered, Plaintiffs seek a declaration,

a) determining Plaintiffs are legally entitled to the $200,000.00 in earnest money;

b) determining Plaintiffs are owed interest on the $200,000.00 at the maximum rate allowed by law;

c) determining HUD does not hold clear lawful title to the Property;

d) determining that no valid, binding agreement exists between the parties or, in the alternative, if such a valid, binding agreement does so exist, then determining that HUD is in breach of said agreement.

e) determining that HUD is illegally withholding funds in the amount of $200,000.00 plus interest from Plaintiffs;

f) determining that HUD is required to reimburse Plaintiffs and return the funds at issue;

g) determining that HUD acted in bad faith in failing to return the earnest money;

h) determining that HUD is liable to Plaintiffs for Plaintiffs' attorneys' fees, interest and costs, pursuant to the Equal Access to Justice Act and any other applicable statute or law; and

i) such other relief as may be deemed appropriate pursuant to any applicable law.

## COUNT II

## MONEY HAD AND RECEIVED

32. Plaintiffs reallege and reaver each and every allegation of the Complaint as if set forth fully herein.

33. Defendant HUD owes Plaintiffs $200,000.00, plus interest for money had and received from Plaintiffs Hubbard Properties, Inc and James L. Hubbard paid in the form of a certified check from First American Bank, check number 00618488, dated September 13, 2006, Paid to the Order of Secretary of HUD or J.L. Hubbard and listing "J.L. Hubbard" as Remitter.

34. Defendant has wrongfully received, retained, deposited, and refused to return said funds to Plaintiffs in bad faith.

WHEREFORE, the Plaintiffs demand judgment against Defendant for compensatory damages and/or equitable relief in excess of the minimum jurisdictional limits of this Court plus interest, costs, and attorneys' fees pursuant to the Equal Access to Justice Act and/or any other applicable statute or law.

## COUNT III

## BREACH OF CONTRACT

35. Plaintiffs reallege and reaver each and every allegation of the Complaint as if set forth fully herein.

36. In the event the Court determines that the parties in fact did enter into a valid, binding agreement, Plaintiffs claim damages from the Defendant for breach of said agreement.

37. In the event that the Court determines a valid contract between the parties exists, then HUD breached the agreement at issue by failing to return the earnest money to Plaintiffs as required. Plaintiffs are in full compliance with all terms of the agreement.

38. In addition, HUD breached said agreement by prohibiting Plaintiffs from carrying out their obligations under the agreement, by failing to act in good faith, by failing to provide notice of a closing date, by failing to protect the Property at issue from damage and by failing to negotiate on the value prior to closing after the Property sustained substantial damage.

39. HUD further breached the agreement by failing to "direct the return of the earnest money deposit and any extension fee(s)" after Plaintiffs withdrew the bid. See Exhibit "A," section 11.

40. Plaintiffs claim damages for breach of the contract between the parties for both direct and consequential damages.

WHEREFORE, the Plaintiffs claim damages from the Defendant in an amount in excess of the minimum jurisdictional limits of this Court, plus interest, costs, and attorneys' fees pursuant to the Equal Access to Justice Act and/or any other applicable statute or law.

## COUNT IV

## UNJUST ENRICHMENT

41. Plaintiffs reallege and reaver each and every allegation of the Complaint as if set forth fully herein.

42. Under the facts and circumstances of this case and the fact that Plaintiffs paid valuable consideration as earnest money in return for the sale of the Property, and that HUD received valuable consideration in the amount of $200,000.00, and Plaintiff is otherwise in full

compliance and acted in good faith, it would be inequitable to allow HUD to retain the value of such consideration as well as title to the Property.

43. Defendant has been unjustly enriched to the extent HUD received the benefit of earnest money funds and upon information and belief sold the Property to a third party another bidder at auction.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court will determine, adjudge, and decree, that HUD has been unjustly enriched to the detriment of Plaintiffs, and that Defendant must repay Plaintiffs in the amount of $200,000.00, plus interest, costs, and attorneys' fees pursuant to the Equal Access to Justice Act and/or any other applicable statute or law, or such other amount as is determined equitable by the Court.

Done this 25 day of February, 2008.

James L. Hubbard

**STATE OF ALABAMA** )
)
**JEFFERSON COUNTY** )

Before me, a Notary Public in and for said County, in said State, personally appeared James L. Hubbard, whose name is signed to the foregoing verified complaint, and who is known to me and who, being by me first duly sworn and deposed, said that he has knowledge of the facts stated in the foregoing verified complaint, and that the said facts as therein stated are true and correct.

Sworn to and subscribed before me on this the 25th day of February, 2008.

NOTARY PUBLIC
My Commission Expires: 8/21/08

Respectfully submitted,

Richard E. Smith
Clark A. Cooper
William R. Pringle
Attorneys for Plaintiffs Hubbard Properties, Inc.
and James L. Hubbard

**OF COUNSEL:**
Christian & Small, LLP
505 20th Street North, Suite 1800
Birmingham, Alabama 35203
(205) 795-6588

**PLEASE SERVE THE ATTORNEY GENERAL OR AN AGENT DESIGNATED BY THE AUTHORITY OF THE ATTORNEY GENERAL PURSUANT TO RCFC 4.**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HUBBARD PROPERTIES, INC and JAMES L. HUBBARD | * | |
| PLAINTIFFS, | * | |
| VS. | * | Case No.________________ |
| SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | * | |
| DEFENDANT. | * | |

**LIST OF PLAINTIFF'S PURSUANT TO RCFC RULE 20(a)**

1. Hubbard, James

2. Hubbard Properties, Inc.

**ATTACHMENT B**

TERMS AND REQUIREMENTS OF FORECLOSURE SALE - ACKNOWLEDGMENT BY BIDDER

PART I

BID PRICE - The Undersigned, Jim Hubbard or an LLC to be formed (the "Bidder") submits a bid of One Million, Three Hundred Thousand Dollars ($ 1,300,000.00 ) at the foreclosure sale of Highland Village Apartments (the "Project", the legal description of which is included as Exhibit A of Attachment C, Foreclosure Sale Use Agreement) to be paid as follows:

1. $200,000 in the form of a money order, cashier's or other bank check, as earnest money, which has been paid at the foreclosure sale to the person that conducts the foreclosure sale, and which shall not earn interest (the "Deposit"), and

2. $ 1,100,000.00 the balance, to be paid by the Bidder at Closing, in the form of a cashier's or other bank check in accordance with this Acknowledgment. The Closing will be held at a place, date and time established in accordance with Section 4 below (the "Closing").

3. In addition to the above, the Bidder will be required to pay at closing all closing costs, regardless of local custom, and, where applicable, other deposits to reserve and/or letters of credit as described in Riders incorporated herein, the Invitation for Bid (Invitation), and the Foreclosure Sale Use Agreement (Use Agreement).

PART II

If selected as the high Bidder at or after the foreclosure sale, the Bidder, by executing this document (the "Acknowledgment"), acknowledges that the Bidder must comply with the following requirements as a condition to purchasing the Project:

1. ACKNOWLEDGMENT OF TERMS - Bidder affirms to have full knowledge of the all terms, conditions and requirements contained in this Acknowledgment and documents referred to herein, the Invitation and Attachments, and the Notice of Default and Foreclosure Sale. Bidder must execute this document.

2. EXECUTION OF USE AGREEMENT - At Closing, Bidder will, in addition to any other documents, execute the Foreclosure Sale Use Agreement and all of the Exhibits to the Use Agreement as contained in the Invitation to Bid. Such documents will control the use of the Project for a specified period and will be recorded with the Deed and run with the land.

3. PREVIOUS PARTICIPATION CERTIFICATION -
   (a) **Two Days following Foreclosure Sale:** The high Bidder must submit **within two** (2) Federal Government working days of the foreclosure sale, certification to HUD that the Bidder has registered in APPS and Secure Systems. This certification can be in the form of a copy of the *Participant Successfully Registered* page from the APPS system **and** a copy of the *Multifamily Coordinator and User Registration page* from Secure Systems or a copy of the *Participant Detail* page (see APPS User Guide-Industry, Chapter 15, pages 15-2 through 15-4 for printing instructions). The high Bidder is also responsible for submitting any changes necessary for principals, tax ID, and ownership in the APPS system.
   (b) **Fifteen Days following Foreclosure Sale:** The high Bidder must submit within fifteen (15) Federal Government working days of the foreclosure sale, certification to HUD that the Bidder (owning entity) has completed the 2530 submission process in APPS. This certification must be in the form of a printed copy of the *2530 Submission Package* (see APPS User Guide-Industry, Chapter 15, pages 15-2 through 15-4).

   The high bidder must also provide Certification to HUD that any other projects that are owned by the high bidder or its affiliates and are located in the same jurisdiction as Highland Village Apartments are in substantial compliance with applicable State and/or local housing statutes, regulations, ordinances and codes. HUD may, in its discretion, verify the accuracy of such certification and request supporting documentation from the high bidder. If HUD determines in its sole discretion that such other projects are not in substantial compliance, HUD will have the right to refuse to sell the project to the high bidder (See Attachment G).

4. ESTABLISHMENT OF CLOSING DATE, TIME AND PLACE
   (a) Time is of the essence.
   (b) HUD will notify the Bidder and the person conducting the foreclosure sale (the "Foreclosure Official") after HUD determines that the Bidder has been approved to purchase this project under the Previous Participation Certification procedure. The Foreclosure Official will establish a time and date for the Closing. The Closing **shall be within thirty (30) days of such notification,** unless extended pursuant to Section 8.
   (c) The Closing will take place at the HUD office stated in the Invitation or at such other place as may be agreed upon between HUD and the Foreclosure Official.

5. CLOSING, CLOSING EXPENSES AND TRANSFER OF POSSESSION
   (a) The sale shall be effective upon Closing.
   (b) Bidder (Purchaser) shall pay all closing costs and expenses irrespective of local custom.
   (c) Transfer of title to and possession of the Property shall become effective as of the Closing.



EXHIBIT A

6. PAYMENT OF PURCHASE PRICE AT CLOSING - The Bidder (Purchaser) shall pay the balance at Closing in the form of a cashier's or other bank check made out to:

**THE SECRETARY, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

The Closing will be held at a place, date and time established in accordance with Section 4 above.

7. LIQUIDATED DAMAGES - Should Bidder fail or refuse to perform all obligations under this Acknowledgement for any reason including, but not limited to, failure to establish the legal entity that is to take title in a timely manner that permits Closing within the deadline set forth in Section 4, the earnest money deposit and any extension fees, paid under Section 8, shall be remitted to and retained by HUD as liquidated damages.

8. EXTENSION FEES - Extensions of time to close the sale are within HUD's sole and absolute discretion. Any extensions, if granted, will be on the following conditions:
   (a) A written request for an extension must be received at the HUD office located at: Department of Housing and Urban Development, Five Points Plaza, 40 Marietta Street, Atlanta, GA 30303-2186 within <u>seven</u> **(7)** days prior to the prescribed closing date, or within any extension period and **must be accompanied by the payment** of the required extension fee. The request must state the reason for Bidder's inability to close the sale within the initial period or any extended period.
   (b) Extensions shall be for thirty (30) days.
   (c) For each thirty (30) day period requested by Bidder and approved by HUD, extension fees shall be equal to **$19.06**, per unit, per day, (the holding cost for such period) or one and one-half percent (1.5%) of the purchase price, whichever is greater.
   (d) These fees shall be retained by HUD and shall not be credited to the amount due from Bidder at Closing. However, if Bidder closes prior to the expiration of an extension period, the prorated amount of the extension fee, for the unused portion of the extension period, shall be credited toward the amount due from Bidder at Closing.
   (e) The granting of one or more extensions shall not obligate HUD to grant additional extensions.
   (f) If any form or instrument required by HUD is not submitted within sufficient and reasonable time for HUD's review or processing and such delay necessitates an extension of the Closing deadline, an extension fee must be paid for this period.
   (g) Extension Fees must be submitted by money order, certified, cashier's or other bank check acceptable to HUD.

9. BIDDER RESTRICTIONS
   (a) No Member of/or Delegate to Congress, resident commissioner, or local elected official, shall be admitted to any share or part of this sale, or to any benefit arising from it. However, this provision does not apply to this sale to the extent that this sale is made with a corporation for the corporation's general benefit.
   (b) If Bidder is, or becomes suspended, debarred, or temporarily denied from participating in HUD programs prior to closing, this sale shall be terminated. In addition, if such suspension, debarment or temporary denial of participation occurs either before or after Bidder's execution of this Acknowledgment, any extension fees paid under Section 8 shall be retained by HUD as liquidated damages.
   (c) Pursuant to 24 CFR Part 27 Section 20(f), the defaulting mortgagor, or any principal, successor, affiliate, or assignee thereof, on the multifamily mortgage being foreclosed, shall not be eligible to bid on, or otherwise acquire, the property being foreclosed by the Department under this subpart or any other provision of law. A "principal" and an "affiliate" are defined as provided at 24 CFR 24.105.

10. AS-IS SALE; NO REPRESENTATIONS
   (a) Bidder shall accept the Property "as is." HUD makes no representations or warranties concerning the physical condition of the Property. In addition, HUD does not represent or warrant the number and occupancy of revenue producing units, or any factor bearing upon the value of the Property.
   (b) Bidder acknowledges that the purchase price set forth in this Acknowledgment is based on Bidder's evaluation of the project and not upon any representations by HUD. Bidder's failure to inspect, or to be fully informed as to any factor bearing upon the valuation of the Property, shall not affect the liabilities, obligations or duties of HUD, nor be a basis for termination of this sale or for the return of any extension fees paid pursuant to Section 8.

11. RISK OF LOSS AND RIGHTS OF RESCISSION - In the event of any substantial damage to the Project prior to closing by any cause including, but not limited to, fire, flood, earthquake, tornado and significant vandalism other than willful acts or neglect, HUD, in its sole discretion, may negotiate with the Bidder for a reduction in the sales price corresponding to the estimated amount of damages. Such damages shall be added to the Post-Closing repair requirements, HUD Form - 9552 included in the Invitation. If HUD and the Bidder are unable to agree on the amount by which the purchase price should be reduced or on the amendment to the repair requirements, Bidder may withdraw the bid, in which case HUD will direct the return of the earnest money deposit and any extension fee(s) will be returned.

12. PRORATIONS
(a) Except as set forth in paragraph (b) below, there will be no prorations at Closing. The Bidder will be responsible only for those expenses incurred at the Project after Closing.
(b) At Closing, the Bidder will pay the Foreclosure Official a prorata share of any property taxes on the Project which have been paid for a period of time ending after the date of Closing. The Bidder will be responsible for paying in full, all taxes, that come due after Closing. Taxes paid by the Bidder after Closing will not be prorated, even if those taxes are for a period which began prior to Closing.
(c) No later than fifteen (15) days before Closing, HUD will notify the Bidder of the amount the Bidder is to pay the Foreclosure Official as the prorata share of taxes.

13. SECURITY DEPOSITS - APPLICATION AS CHECKED:
☒ Notwithstanding State or local law, the Bidder will receive only those security deposits which are on hand at the Project on the date of Closing. The Bidder will assume all liability under State and local law with respect to security deposits.
☐ Any security deposits collected from tenants and paid over to HUD prior to the Closing shall be transferred and assigned to Bidder within fifteen (15) days after the closing, with the exception of security deposits which have been forfeited by the tenant in accordance with the terms of the tenant's lease. Notwithstanding State and local law, no other security deposits collected from tenants will be transferred by HUD to Bidder and HUD has no other liability under State and local law with respect to security deposits. Bidder agrees to assume all responsibility and liability under State and local law with respect to the collection, application and return of security deposits.

14. LIMITATION OF LIABILITY - Notwithstanding any other provisions of this sale, HUD's liability shall not exceed the amount of funds paid by Bidder to HUD and/or the Foreclosure Official hereunder.

15. ANTI-COLLUSION CERTIFICATION
(a) The Bidder certifies:
(i) The bid price in this offer has been arrived at independently, without (for the purposes of restricting competition) any consultation, communication, or agreement with any other Bidder relating to:
a. the bid price;
b. the intention to submit a bid price; **or**
c. the methods or factors used in calculating the bid price offered;
(ii) The bid price in this offer has not been and will not be knowingly disclosed by the Bidder, directly or indirectly, to any other Bidder or competitor before or during the actual time of the bid event, unless otherwise required by law; **and**
(i) No attempt has been made or will be made by the Bidder to induce any other Bidder to submit or not to submit a bid price for the purpose of restricting competition.
(b) If the bid procedure requires or permits written bids, each signature on the offer is considered to be certification by the signatory that the signatory:
(i) Is the person in the Bidder's organization responsible for determining the bid price being offered in this bid and that the signatory has not participated and will not participate in any action contrary to paragraph (a) above; **or**
(ii) Has been authorized, in writing, to act as agent for the following principals in certifying that those principals have not participated, and will not participate in any action contrary to paragraph (a), above;

Name________________________________________

Title________________________________________
Organization responsible
for determining bid price______________________________
a. As an authorized agent, does certify that the principals named in the above have not participated, and will not participate, in any action contrary to paragraph (a) above; and
b. As agent, has not personally participated, and will not participate, in any action contrary to paragraph (a) above.

16. FAILURE TO COMPLY - Upon the failure or refusal of the Bidder to comply with any of the requirements listed above, HUD may declare the Bidder ineligible to purchase the Project, in which case Bidder shall forfeit the earnest money deposit and any extension fees paid.

17. SEVERABILITY - If for any reason one or more of the provisions contained in the Invitation, including this Acknowledgment, the Use Agreement, or any other attachments or exhibits thereto, shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision(s) of the Invitation, but the Invitation shall be construed as if such invalid, illegal or unenforceable provision(s) had never been included therein.

18. FORMS - All forms and instruments referred to in this Acknowledgment are the standard Form HUD and instruments prepared by HUD and used by HUD in the jurisdiction in which the Property is located and shall contain such additional covenants and conditions required by the Invitation for Bid or Request for Proposals.

19. EXECUTION
   (a) By signature below, Bidder indicates acknowledgment of and agreement to the terms and requirements of this foreclosure sale.
   (b) In the case of a bid submitted by an agent or representative of the Bidder, the signatory attests to be duly authorized to submit the bid on behalf of the Bidder and to execute this Acknowledgment.

**WARNING:** It is a crime to knowingly make false statements to the United States in this document or any other document related to this sale. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code, Section 1001 and Section 1010.

Executed by the Bidder on the 14th day of September, 2006.

Witness: [signature]

Typed Name: JEFFREY E. ROWELL

By: [signature]

Typed Name: JIM HUBBARD

2275 GREEN SPRINGS Hwy
Address:
B'HAM, AL 35205
City, State, Zip
205-320-0203
Phone No. with Area Code:

RIDER 1 OF 1

FORECLOSURE SALE USE AGREEMENT

The Bidder acknowledges the receipt of a copy of the Foreclosure Sale Use Agreement applicable to this project's sale and the inclusion of the following Riders in that Agreement:

- ☒ Nondiscrimination against Multifamily Section 8 Certificate Holders and Voucher Holders
- ☐ Tenant-Based Section 8 Restriction
- ☒ Affordability of Units
- ☐ Two-Year Rent Protection for Pre-Existing Very Low-Income Tenants
- ☒ Post-Closing Repair Escrow Requirements
- ☐ Post-Closing Repair to Local Codes and/or Demolition Escrow Requirements
- ☒ Relocation
- ☐ Relocation [NURSING HOMES, BOARD AND CARE FACILITIES and/or ASSISTED LIVING FACILITIES (ALF)]
- ☒ Asbestos Hazards
- ☒ Lead-Based Paint Hazards
- ☐ Existing Hazardous Substances-Demolition Activities
- ☐ Historic Preservation
- ☐ Mobile Home Parks
- ☐ Retirement Service Centers
- ☐ Project-Based Section 8 Assistance

The Foreclosure Sale Use Agreement, with the above noted Riders, is to be incorporated into and recorded as part of the Deed.

Bidder acknowledges that this Rider is incorporated into and is a part of the Terms and Requirements of Foreclosure Sale - Acknowledgment by Bidder

Bidder ______

EXHIBIT B

091344283007 New 12/03 FIRST DATA M 61886-K / M 1257936

OFFICIAL CHECK

First American Bank

006184888

10-86
220

Remitter J/L. Hubbard

DATE September 13, 2006

PAY TO THE ORDER OF Secretary of HUD or J.L. Hubbard

$ 200,000.00

FIRST AMERICAN 200,000dols00cts DOLLARS

DRAWER: FIRST AMERICAN BANK

NON-NEGOTIABLE

PURCHASER'S COPY

AUTHORIZED SIGNATURE

Issued by Integrated Payment Systems Inc., Englewood, Colorado
To Citibank, N.A., Buffalo, NY

## ATTACHMENT G

Certification of Substantial Compliance

To: United States Department of Housing and Urban Development

From: Jim Hibbard ("High Bidder")

I Certify to HUD that any and all projects that are owned by High Bidder or its affiliates and are located in the same jurisdiction as ALABAMA are in substantial compliance with applicable state and/or local housing statues, regulations, ordinances and codes an are listed on Schedule A attached hereto.

I understand that HUD may, in its discretion, verify the accuracy of this certification and request supporting documentation from High Bidder. It is understood that if HUD determines, in its sole discretion, that such other projects as listed on Schedule A are not in substantial compliance, HUD will have the right to refuse to sell the project to High Bidder.

WARNING: It is a crime to knowingly make false statements to the United States in this document or any other document related to this sale. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code, Section 1001 and Section 1010.

By: [signature]

Name:

Title:

2225 Green Springs Hwy

Address:

Birmingham, Al 35205

Telephone Number: 205-320-0203

EXHIBIT

C

Certification of Substantial Compliance

Schedule A: All projects owned by high bidder or affiliates and are located in the same jurisdiction as the subject property.

| 1. List each project name | 2. List name of principal or affiliate with ownership of project. | 3. List project address |
|---|---|---|
| Autumn Trace Apts | J.L. Hubbard | 1400 Autumn Ln Sylacauga, Al 35150 |
| Beltline Villa | JL Hubbard | 2801 Sandlin Rd Decatur, Al 35601 |
| Central Gardens | JL. Hubbard | 2300 South Park Rd Birmingham Al 35211 |
| City View Apts | JL. Hubbard | 1508 16th Ave. So Birmingham, Al 35205 |
| Chalkville Landing | JL. Hubbard | 121 Trafalgar Sq Birmingham, Al 35215 |
| Country Park | JL. Hubbard | 1051 Villa Rica Ct. Birmingham, Al 35215 |
| Curtis Court | JL. Hubbard | 5405 1st Ave So. Birmingham, Al 35216 |
| Clayton Manor | JL. Hubbard | 23 Cedar St. Clayton, Al 36016 |
| Dover Glen | JL. Hubbard | 2500 Spring Ave Decatur, Al 35601 |
| Eagle View | JL. Hubbard | 1000 Eagle View Dr. Birmingham, AL 35206 |
| Harper Homes | JL. Hubbard | 600 Pecan Dr. Warrior, Al 35206 |
| Montreat Village | JL. Hubbard | 317 4th St. SE Arab Al 35016 |
| Knollwood Apts | JL. Hubbard | 219 Knollwood Ln Alexander City, Al 35010 |
| Larkway Gardens | JL. Hubbard | 204 16th St. SW Birmingham Al 35211 |

Certification of Substantial Compliance

Schedule A: All projects owned by high bidder or affiliates and are located in the same jurisdiction as the subject property.

| 1. List each project name | 2. List name of principal or affiliate with ownership of project. | 3. List project address |
|---|---|---|
| The OAKS | J.L. HUBBARD | 1254 Old Shell RD Mobile, Al 36604 |
| MARTHA Court | J.L. HUBBARD | 7715 2nd CT N Birmingham, AL 35206 |
| MARION Court | J.L. HUBBARD | 4301 4th Ave So. Birmingham AL 35205 |
| MONTEVALLO GARDENS | J.L. HUBBARD | 325 3rd Ave SW Birmingham Al 35211 |
| MOUNTAIN Trace | J.L. HUBBARD | 2101 Briarwood Ave SW FT. PAYNE, Al 35967 |
| McRAE APTS | J.L. HUBBARD | 607 McRae ST. ATMORE, Al 36502 |
| RAINTREE APTS | J.L. HUBBARD | 1321 Towerview ST. SW Decatur, Al 35601 |
| SUNDOWN APTS | J.L. HUBBARD | 635 College Ave BOAZ, AL 35957 |
| ShangriLA APTS | J.L. HUBBARD | 1712 36th ST. N Birmingham, Al 35234 |
| SUNTRACE APTS | J.L. HUBBARD | 928 W. MAIN ST. Albertville, Al 35957 |
| UPTOWN APTS | J.L. HUBBARD | 1519 19th ST. N Birmingham, Al 35234 |
| WOOD EAST APTS | J.L. HUBBARD | 5917 Georgia RD Birmingham, Al 35206 |
| WARRIOR GARDENS | J.L. HUBBARD | 3400 Ave S, Ensley Birmingham, AL 35208 |

Certification of Substantial Compliance

Schedule A: All projects owned by high bidder or affiliates and are located in the same jurisdiction as the subject property.

| 1. List each project name | 2. List name of principal or affiliate with ownership of project. | 3. List project address |
|---|---|---|
| Warrior Terrace | J.L. Hubbard | 2000 Warrior RD Birmingham, Al 35208 |
| Amesbury Apts | J.L. Hubbard | 4084 Amesbury Dr. Montgomery, Al. 36116 |
| Creekside Apts | J.L. Hubbard | 6655 Zeigler Blvd Mobile Al 36608 |
| Colonial Park | J.L Hubbard | 4500 Sprague Ave Anniston, Al 36206 |
| Devonshire Apts | J.L. Hubbard | 811 Deatsville Hwy Millbrook, Al 36054 |
| Four Seasons | J.L. Hubbard | 2251 Helton Dr Florence, Al. 35630 |
| Fox Valley | J.L. Hubbard | 5712 McClellan Blvd Anniston, Al 36206 |
| Hunters Pointe | J.L. Hubbard | 3205 Lloyds Lane Mobile, Al 36693 |
| Jackson Trace | J.L. Hubbard | 500 Whites Gap RD Jacksonville, Al 36265 |
| Montlimar | J.L. Hubbard | 1417 Azalea RD Mobile Al 36693 |
| Pineview Landing | J.L. Hubbard | 160 Broadway Ave Talladega, Al 35160 |

Certification of Substantial Compliance

Schedule A: All projects owned by high bidder or affiliates and are located in the same jurisdiction as the subject property.

| 1. List each project name | 2. List name of principal or affiliate with ownership of project. | 3. List project address |
|---|---|---|
| PARK PlACE | J.L. HUBBARD | 2022 GolF RD Huntsville, Al 35802 |
| StoneBridge | J.L. HUBBARD | 3070 Kelley Ctr Montgomery, Al 36116 |
| Sandlin Villa | J.L. HUBBARD | 324 CARDINAl Dr SW Decatur, Al 35601 |
| Turtle Creek | J.L. Hubbard | 3400 Lloyds Lane Mobile, Al 36693 |

# Active Partners Performance System (APPS)
# Quick Tips

## Step 1 - Establishing Your Organization in APPS

☺ ***Note: A good rule of thumb is if your company has filed a financial statement, then your company should be registered and all that is needed is a Coordinator or User ID.***

- If your company has never done business directly with HUD you need to register by going to the following URL- https://hudapps.hud.gov/apps/part_reg/apps040.cfm
- After completing this screen, the system takes 24 hours to access the data. Wait at least 24 hours after creating the Participant before applying for your Coordinator or User ID.

## Step 2 - Registering for a Coordinator/User ID for a Company or Individual

☺ ***Note: If you do not have a Participant Record in APPS, you must establish your identity within APPS before registering for a Coordinator or User ID. Please refer to Step 1***

**Types of Users in Secure Systems:**

- **Coordinator:** Controls access to the system and performs system administration functions, such as retrieving IDs, and assigning rights to users. For more information please refer to Chapter 3 of the Online User Guide.

☺ ***Note: The system limits each Business Partner to two Coordinators. It is recommended that the Business Partner Executive Director designate two Coordinators to ensure backup of daily system administration needs.***

- **User:** A User can be an employee of the Business Partner or a third party (e.g., CPA) authorized by the Business Partner's Coordinator to submit data for the Business Partner.

☺ ***Note: Please use your parent company Tax ID when registering for Coordinatorship***

☺ ***Note: Initial Coordinator Registration will only register one company/individual.***

☺ ***Note: To request Coordinatorship for multiple companies/individuals, you must have first completed Steps 2 through 5 for your first Coordinatorship. You may then go directly to Step 6 to request additional Coordinatorships.***

- Register for Coordinator/User ID at https://entp.hud.gov/idapp/html/part_reg.htm
- Receiving Your Coordinator/User ID:
  - Allow two week to process the Coordinator ID request.
  - User registration applications are processed nightly. (Can only be retrieved by Coordinator)

EXHIBIT D

# Active Partners Performance System (APPS)
# Quick Tips

### Step 3 - Assigning yourself as a Coordinator

Once you have registered and have received your Coordinator ID, you will need to assign yourself as a Coordinator for the company/individual

- On the APPS Web Page http://www.hud.gov/offices/hsg/mfh/apps/appsmfhm.cfm
- Click Secure Systems
- Enter User name (which is your M ID) and Password (The password you selected during registration.)
- Click "OK"
- On the User Login Legal prompt screen, Click "Continue"
- Select "User Maintenance"
- Enter your Coordinator ID (M ID)
- Click on "Search for User"
- Select "Maintain User Profile – Actions" from the "Choose a Function" drop down menu
- Click "Submit"
- Check "COR – Coordinator" checkbox and "UPD- Update" checkbox
- Click "Assign/Unassign Actions"
- Select "OK". You have now assigned yourself as a Coordinator

### Step 4 - Assigning yourself role and User roles

- On the "Secure Systems Main Menu", select "User Maintenance"
- Enter your "Coordinator ID" or "User ID" (M ID)
- Select "Maintain User Roles" from the " Choose a Function" drop down menu
- Click "Submit"
- Check "AUP– APPS Update" checkbox
- Click "Assign/Unassigned Action"
- Select "OK". You have now assigned yourself roles

☺ ***Note: Please reboot your system at this point for your new assignments and roles to be activated.***

### Step 5 - Assigning yourself rights to Company/Companies/Individuals

- From the Secure Systems Main Menu page, select "Participant Assignment Maintenance"
- Enter your User ID (M ID)
- Select "Assign Participant" from the "Choose a Function" drop down menu
- Select "AUP - APPS Update" from the Choose a Role section
- Select the company/companies/individuals you want to assign rights to from the Participant section ( You can select multiple participants by using the Control key on your keyboard)
- Click "Submit"
- Verify the list of company/companies/individuals you are requesting relationships for
- Click "Confirm"
- Click "OK"

# Active Partners Performance System (APPS)
# Quick Tips

## Step 6 - Registering Coordinatorship for multiple Companies/Individuals

☺ ***Note: You must complete Steps 2 through 5 before you can request Coordinatorship for multiple companies/individuals.***

- From The "Secure Systems Main Menu", select "Business Partners Maintenance"
- Enter your User ID
- Select "Request New/Delete Existing Relationships" from the "Please enter a Function" drop down menu
- Enter the Taxpayer Identification Number (TIN)/Social Security Number (SSN) for the companies/individuals you would like to assign rights to
- Click "Submit"
- Verify names and addresses (To ensure activation keys are mailed to the proper address)
- Click "Confirm"
- Click "OK"

☺ ***Note: You will need to wait at least two weeks to receive your activation keys from HUD.***

- To activate your relationships:
  - From the Secure Systems Main Menu page, select "Business Partners Maintenance"
  - Select "Activate Relationships" from the "Please enter a Function" drop down menu.
  - Enter Activation Keys
  - Click "Submit"
  - Verify information
  - Click "Confirm"
  - Click "OK"

## Step 7- Assigning yourself rights to Company/Companies/Individuals

- Repeat Step 5

## Step 8 - Assigning the User System Roles by the Coordinator

- For the Coordinator to retrieve the User ID:
  - From the Secure Systems Main Menu page, select "User Maintenance"
  - Enter "First Name" and "Last Name" of the User
  - Select "Search Users"
  - Retrieve User ID
- To assign the User System Roles:
  - From the Secure Systems Main Menu, select "Participant Assignment Maintenance"
  - Enter the retrieved User ID (M ID), select Assign Participant from the "Choose a Function" drop down menu
  - Select "AUP/APPS Update"
  - Select the company/individual you want to assign user roles to ( You can select multiple companies/individuals by using the Control key on your keyboard)
  - Click "Submit"
  - Verify information
  - Click "Confirm"

# Active Partners Performance System (APPS)
# Quick Tips

- Click "OK"
- The User will now be able to submit data for the company/individual.

**Step 9 – Getting started in APPS ☺**

- From the Secure System, select "Active Partners Performance System (APPS)"
- Select "Create Baseline" from the "Submission Processing" drop down menu.
- Click "Go"
- Enter "TIN"

☺ ***Note: The baseline submission is a wizard process that takes you through each step in establishing a baseline. Please refer to Chapter 6 of the Online User Guide for detailed instructions on baseline submissions.***

The steps in the wizard process are:

**Step 1 - Enter Contact information**

- Select "Create Baseline" from the *Submission Processing* drop-down list. Click Go.
- Enter the applicant's TIN. Click Submit.
- Enter the Contact Information. (Note that the Fields marked with an asterisk are mandatory.) Click on Next Step.

**Step 2 - Create Organizational Structure**

☺ ***Note: You must add at least one individual principal to the Organization Structure in order to submit a Baseline.***

☺ ***Note: Organizations added as principals must have previously submitted a Baseline Submission in APPS.***

- To add Principals from the Step 2 Organization Structure screen select the Add Principal button.
- Enter the principals TIN or SSN. Select Search.
- Enter the principal's information. (Fields marked with an asterisk are required).
- Click Save. The screen refreshes with the message, "Principal has been added successfully."
- To add another principal repeat this process. Select Next Step.
- To edit principals, select Edit Principal, edit and save.
- To remove principals, select Remove Principal, remove and save.

# Active Partners Performance System (APPS)
# Quick Tips

## Step 3 - Add Previous Participation

☺ ***You can only add/edit Previous Participation while entering a submission and prior to sending the submission to HUD.***

☺ ***Previous Participation is accessible from the APPS Home Page in the Participant Processing drop-down list, the 2530 Submission screen, the Organization Structure screen, and the Submission List screen from the Select participant processing drop-down list.***

- To add Previous Participation from the 2530 Submission, Step 3 Edit Previous Participation screen select Previous Participation, Click Add Participation.
- Select a Property Role (note the fields marked with an asterisk are mandatory.) Fill information and click Search.
- Select the property for which you want to establish Previous Participation. Click Previous Participation.
- To edit select edit link on the upper right hand corner of that respective section.
- When done click on Finish. The Previous Participation Detail screen displays your new information.
- Click Save. The Screen refreshes with the message, "Save was successful."
- Click Previous Participation List button to go back to the Previous Participation List screen.
- To edit Previous Participation select "Edit Previous Participation" from the Select Participant Processing drop-down list. OR From the 2530 Submission screen, select "Previous Participation" from the *Select participant processing* drop-down list.
- Select the Previous Participation to be edited. Click Edit Participation.
- Edit the appropriate fields. Click Save. Screen displays with the message, "Save was successful."
- Click Previous Participation List button. The Previous Participation List screen displays with your new information.
- To return to the 2530 Submission page click on 2530 Submission Edit Previous Participation

## Step 4 - Add Comments

- From the 2530 Submission Step 4, Edit Applicant Comments screen add comments and Click on Finish. The screen will refresh with a message Baseline Submission completed.

Once you have established all Principals and Previous Participation, you have now completed the Baseline Submission Process. You will now be redirected back to the APPS Home page.



EXHIBIT
E1



EXHIBIT
E2



EXHIBIT
E3



EXHIBIT
4



EXHIBIT E5



EXHIBIT E6



EXHIBIT
E 7



EXHIBIT
E8



EXHIBIT 9



EXHIBIT
E 10



EXHIBIT



EXHIBIT
E 12



EXHIBIT
E 13